UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MICHAEL WYMAN, <br><br> *Plaintiff*, <br><br> v. <br><br> NEW ERA TECHNOLOGY, INC., <br><br> *Defendant*. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No.: 1:24-cv-11450-BEM <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANT NEW ERA TECHNOLOGY, INC.'S**
**LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Pursuant to Local Rule 56.1, Defendant New Era Technology, Inc. ("New Era") submits this Statement of Material Facts Not in Dispute in conjunction with its Motion for Summary Judgment.

**Plaintiff's Employment for New Era**

1. New Era is in the business of providing technology solutions to customers, including audiovisual services such as videoconferencing, large venue solutions, and video surveillance. (Ex. 1, Doherty Dep. Tr., at 24:9-25:15.) [1]

2. Plaintiff began his employment for New Era in March 2011 as an Audiovisual Coordinator. (Ex. 2, Audiovisual Coordinator Job Description, NEWERA 00151-00153; Ex. 3, Defendant's Interrogatory Responses, Response No. 11.)

3. In February 2021, Plaintiff was promoted to the position of Onsite Services Manager, PA. (Ex. 4, Onsite Services Manager Job Description, NEWERA 00298-00300.) In

---

[1] "Ex." references are to New Era's exhibits, which are attached to the Declaration in Support of New Era's Motion for Summary Judgment filed with this Rule 56.1 Statement.

this position, Plaintiff reported to New Era's office in Pennsylvania, but he worked remotely from Massachusetts. (*Id.*; Ex. 5. Wyman Dep. Tr., at 26:2-6.)

    4.      Plaintiff's job duties as Onsite Services Manager included, among other things:

- "Obtaining weekly reporting from onsite staff, performing monthly meetings, and meeting with staff and clients on a quarterly basis."
- "Maintaining a thorough understanding of onsite managed services contracts."
- "Utilizing the ticketing system to create tickets for and approve time sheets for direct reports."
- "Becoming proficient in software needed to perform his duties."
- "Following guidelines regarding proper preparation of, and timely submission of, all paperwork and administrative requirements."
- "Performing other duties as necessary by contract or management."

(Ex. 4, Onsite Services Manager Job Description, NEWERA 00298-00300.)

    5.      During the time Plaintiff was employed as Onsite Services Manager, New Era had a contract with Samsung, through third party Aramark, to provide onsite audiovisual services to Samsung at Samsung's offices and facilities (the "Samsung Contract"). (Ex. 6, Rule 30(b)(6) Dep. Tr., at 41:15-42:20; Ex. 7, September 5, 2019 Facilities Service Provider Agreement, NEWERA00407-00417; Ex. 8, March 5, 2023 Facilities Service Provider Agreement, NEWERA00392-00406.)

    6.      The Samsung Contract included a flat fee for contracted services provided within specified business hours in addition to an hourly overtime rate for services performed outside of business hours. (Ex. 7, Facilities Service Provider Agreement, NEWERA00407-00417; Ex. 8, Facilities Service Provider Agreement, NEWERA00392-00406.)

    7.      For New Era to be paid the additional rate for overtime performed under the Samsung Contract, the overtime hours needed to be billed separately through creation of a monthly ticket in Connectwise, New Era's enterprise resource planning (ERP) system, separate from the

monthly ticket for flat fee services. (Ex. 6, Rule 30(b)(6) Dep. Tr., at 29:19-30:12, 32:6-17; Ex. 9, Schneider Dep. Tr., at 36:3-16, 38:14-21.)

8. Plaintiff received training about the details of how to use Connectwise when he transitioned into the role of Onsite Services Manager. (Ex. 9, Schneider Dep. Tr., at 34:18-35:11; Ex. 5, Wyman Dep. Tr., at 36:4-23.)

9. As Onsite Services Manager, Plaintiff was ultimately responsible for reviewing and approving the timesheets of employees who reported to him, creating and approving tickets for overtime, and ensuring that Samsung was billed for overtime work. (Ex. 1, Doherty Dep. Tr., at 109:4-19, 110:12-111:17, 112:18-24; Exhibit 9, Schneider Dep. Tr., at 36:3-16, 139:12-18; Ex. 5, Wyman Dep. Tr., at 27:17-29:3, 30:4-14, 57:20-24.)

**Plaintiff's Notification of His Intent to Take Parental Leave**

10. In May or June 2023, Plaintiff verbally informed his supervisor Paul Schneider, Vice President of Operations, US, that his wife was pregnant and that he intended to reach out to Human Resources about taking parental leave. (Ex. 3, Defendant's Interrogatory Responses, Response No. 16; Ex. 9, Schneider Dep. Tr., at 52:13-53:5; Ex. 5, Wyman Dep. Tr., at 87:19-88:8.)

11. Other than Schneider, Plaintiff did not inform anyone else in New Era management of his wife's pregnancy or his intent to take parental leave and no one else in management was aware prior to his termination. (Ex. 6, Rule 30(b)(6) Dep. Tr., at 21:21-23:5, 73:23-74:12; Ex. 5, Wyman Dep. Tr., at 91:19-24.)

12. Plaintiff testified at his deposition that Schneider "looked visibly surprised for about a second" when Plaintiff told him of the duration of his leave, but this was based on Plaintiff's perception of Schneider's body language and not anything Schneider said. (Ex. 5, Wyman Dep. Tr., at 103:12-105:8.) In their conversations, Schneider gave Plaintiff only positive

feedback about taking leave and told him to take whatever time he needed and that he would be covered while he was out. (*Id.* at 101:11-104:5.)

13. On June 19, 2023, Plaintiff emailed New Era's general Human Resources email about his wife's pregnancy and his intent to take leave. (Ex. 5, Wyman Dep. Tr., at 90:13-91:9; Ex. 10, Email from Michael Wyman to New Era HR, NEWERA 00362.) The email was fielded by Amy Drilling, HR Specialist, who handled Plaintiff's business unit. (*Id.*) Plaintiff wrote in the email, "I've spoken to my manager [Schneider] and he was very understanding and willing to accommodate any needed leave, as long as there is a plan in place." (*Id.*)

14. On July 10, 2023, Plaintiff submitted an internal paid parental leave request form. (Ex. 11, Michael Wyman Paid Parental Leave Request Form, NEWERA 00172.)

15. In July and August 2023, Plaintiff and Drilling communicated by email about the details of Plaintiff's leave. (Ex. 12, July-August 2023 Email chain between Michael Wyman and Amy Drilling, NEWERA 00363-00365.)

16. Within that email chain, on August 7, 2023, Plaintiff informed Drilling of his intention to take twelve weeks of parental leave beginning on or around September 15, 2023. (Ex. 12, Email chain between Michael Wyman and Amy Drilling, at NEWERA 00364.)

17. On August 8, 2023, Drilling informed Plaintiff that he would be put on a leave of absence for eleven weeks and that he would need to apply through New Era benefits provider Prudential for state leave rather than to Massachusetts directly. (Ex. 12, Email chain between Michael Wyman and Amy Drilling, at NEWERA 00363.)

18. Other than his email communications with Drilling, Plaintiff did not communicate with anyone else in Human Resources about his leave request. (Ex. 5, Wyman Dep. Tr., at 91:14-24.)

19. Plaintiff completed and submitted his application for Paid Medical Leave benefits through Prudential after his termination. (Ex. 5, Wyman Dep. Tr., at 81:11-20.)

20. Plaintiff's wife gave birth on September 4, 2023. (Ex. 5, Wyman Dep. Tr., at 81:24-82:5.)

21. On October 9, 2023, Plaintiff was approved for Paid Family Medical Leave benefits through Prudential commencing on September 15, 2023 following an unpaid waiting period of one week. (Ex. 13, October 9, 2023 Letter from Prudential to Michael Wyman, MW00001-00002.)

22. Plaintiff received biweekly Paid Family Medical Leave benefits in the amount of $2,259.64 from September 15, 2023 through November 30, 2023. (Ex. 13, October 9, 2023 Letter from Prudential to Michael Wyman, MW00001-00002.)

**Plaintiff's Termination**

23. In or around July 2023, Sean Doherty, President of New Era's Technology Services Group, discovered that New Era's contract with Samsung was not profitable when he was reviewing requests for a raise from members of the team and determining a commission to pay to the account manager. (Ex. 6, Rule 30(b)(6) Dep. Tr., at 24:7-21; Exhibit 1, Doherty Dep. Tr., at 32:4-33:18.)

24. In late July or early August 2023, Doherty reached out to Schneider by telephone to discuss why the Samsung Contract was not profitable. (Ex. 3, Defendant's Interrogatory Responses, Response No. 13; Exhibit 1, Doherty Dep. Tr., at 32:4-33:18; Ex. 9, Schneider Dep. Tr., at 78:13-79:9, 81:16-82:3.)

25. At Doherty's request, Schneider investigated the matter and discovered that Samsung had not been invoiced for overtime work. Schneider asked Plaintiff about the Samsung Contract's lack of profitability and whether overtime was billed, and Plaintiff responded that he

did not know.  (Ex. 3, Defendant's Interrogatory Responses, Response No. 13; Ex. 9, Schneider Dep. Tr., at 83:6-84:4, 85:6-10, 86:20-87:20.)

26.     On August 4, 2023, Doherty emailed Schneider with three specific follow-up questions about the underbilling of Samsung:

- "The total invoice amount (to Samsung) for unbilled overtime in 2023."
- "Based on the 2022 unbilled overtime invoice amount and your local knowledge of the Samsung account, a annualized projection of unbilled overtime for 2022 (and 2021 if possible)."
- "The name of the person that was responsible for tracking and invoicing these amounts to Samsung."

(Ex. 14, August 2023 Email chain between Sean Doherty and Paul Schneider, NEWERA 00166-00168.)

27.     To answer Doherty's questions, Schneider looked through all the timesheets for the Samsung account in 2022 and 2023.  With assistance from Sandy Ciarlo, Managed Solutions Support Specialist, Schneider entered the information about unbilled overtime amounts he found from review of the timesheets into a spreadsheet.  (Ex. 6, Rule 30(b)(6) Dep. Tr., at 28:4-23; 69:10-15; Ex. 9, Schneider Dep. Tr., at 87:21-89:19, 104:9-105:11.)

28.     Schneider also spoke with Jerry Savage, Plaintiff's predecessor in the Onsite Managed Services position, and Chris Turner, Managed Solutions Account Executive.  (Ex. 9, Schneider Dep. Tr., at 96:20-97:9, 98:12-99:9.)

29.     On August 7, 2023, Schneider emailed Doherty with responses to Doherty's questions and attached the spreadsheet he and Ciarlo had populated showing the total amount of unbilled overtime in 2022 and 2023 and the dollar value – $160,885 total, of which only $50,485 could be invoiced, resulting in a loss of $110,400.  (Ex. 14, August 2023 Email chain between Sean Doherty and Paul Schneider, at NEWERA 00166-00167; Ex. 15, Spreadsheet attached to August 7, 2023 from Paul Schneider to Sean Doherty, NEWERA 00308-00309.)

30. Schneider also responded that Plaintiff was responsible for setting up, approving, and tracking timesheets and that anything outside of contracted hours were to be billed separately, which Plaintiff would need to do and give the information to Ciarlo for service billing. (Ex. 14, August 2023 Email chain between Sean Doherty and Paul Schneider, at NEWERA 00167.)

31. When he responded to Doherty with the information Doherty had requested, Schneider did not know what the outcome would be and did not suspect Plaintiff would be terminated. (Ex. 9, Schneider Dep. Tr., at 105:20-106:9.)

32. After receiving and reviewing the August 7, 2023 email and attached spreadsheet from Schneider, Doherty immediately decided to terminate Wyman's employment due to gross negligence. (Ex. 14, August 2023 Email chain between Sean Doherty and Paul Schneider, at NEWERA 00166; Ex. 6, Rule 30(b)(6) Dep. Tr., at 21:14-18, Ex. 1, Doherty Dep. Tr., at 30:10-31:6, 101:18-102:12.)

33. Prior to Plaintiff's termination, Doherty was not aware that Plaintiff's wife was pregnant or that he intended to take parental leave. (Ex. 3, Defendant's Interrogatory Responses, Response No. 14; Ex. 1, Doherty Dep. Tr., at 88:24-89:7; Ex. 5, Wyman Dep. Tr., at 99:9-23.) Indeed, as far as Plaintiff could recall he never met, spoke with, or communicated with Doherty in any capacity. (Ex. 5, Wyman Dep. Tr., at 92:1-6; 100:24-101:10, 115:5-14.)

34. On August 9, 2023, Doherty consulted with Angela Johnson, Global Head of Human Resources, about Plaintiff's termination. Johnson agreed with the decision to terminate. (Ex. 16, Johnson Dep. Tr., at 30:23-32:4, 33:3-6.)

35. Prior to Plaintiff's termination, Johnson was not aware that Plaintiff's wife was pregnant or that he intended to take parental leave. (Ex. 16, Johnson Dep. Tr., at 37:22-38:2, 48:7-49:5, 71:2-14.)

36. Doherty wrote to Schneider on August 9, 2023 and directed that Plaintiff's employment be terminated "effective immediately" due to his "gross negligence" resulting in "significant lost revenues over an extended period of time." (Ex. 14, August 2023 Email chain between Sean Doherty and Paul Schneider, at NEWERA 00166; Ex. 1, Doherty Dep., at 45:16-47:6.)

37. Plaintiff's employment was terminated the next day, August 10, 2023. (Ex. 3, Defendant's Interrogatory Responses, Response No. 13.)

38. Following his termination, Plaintiff's position was not replaced, and his job duties were taken over by Schneider. (Ex. 3, Defendant's Interrogatory Responses, Response No. 15; Ex. 9, Schneider Dep. Tr., at 106:14-21.)

39. New Era was unable to recover the unbilled overtime amounts from 2022 and 2023 from Samsung and took a loss of over $100,000 as a result. (Ex. 9, Schneider Dep. Tr., at 119:8-23.)

Respectfully submitted,

NEW ERA TECHNOLOGY, INC.,

By its attorneys,

*/s/ Justin L. Engel*
Steven D. Weatherhead, BBO #637601
Justin L. Engel, BBO #683894
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110-3536
Telephone: (617) 456-8000
Facsimile: (617) 456-8100
sweatherhead@princelobel.com
jengel@princelobel.com

Dated: August 6, 2025

## CERTIFICATE OF SERVICE

    I, Justin L. Engel, hereby certify that, on August 6, 2025, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                        */s/ Justin L. Engel*
                                        Justin L. Engel