UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL WYMAN,
    Plaintiff,

v.

NEW ERA TECHNOLOGY, INC.
    Defendant.

Civi l Action No. 1:24-11450-BEM

**PLAINTIFF, MICHAEL WYMAN'S
STATEMENT OF MATERIAL FACTS IN DISPUTE**

Pursuant to Local Rule 56.1, the Plaintiff, Michael Wyman ("Mr. Wyman") submits the within Statement of Material Facts in Dispute in connection with his *Opposition to Defendant's Motion for Summary Judgment*.

**PLAINTIFF'S DISPUTED FACTS AND SUPPORTING EVIDENCE
(RESPONSES TO DEFENDANT'S MATERIAL FACTS NOT IN DISPUTE)**

1. New Era is in the business of providing technology solutions to customers, including audiovisual services such as videoconferencing, large venue solutions, and video surveillance. (Ex. 1, Doherty Dep. Tr., at 24:9-25:15).

   **The Plaintiff Admits the averments contained in Paragraph 1.**

2. Plaintiff began his employment for New Era in March 2011 as an Audiovisual Coordinator. (Ex. 2, Audiovisual Coordinator Job Description, NEWERA 00151-00153; Ex. 3, Defendant's Interrogatory Responses, Response No. 11).

   **The Plaintiff Admits the averments contained in Paragraph 2.**

3. In February 2021, Plaintiff was promoted to the position of Onsite Services Manager, PA (ex. 4, Onsite Services Manager Job Description, NEWERA 00298-00300.) In this

1

position, Plaintiff reported to New Era's office in Pennsylvania, but he worked remotely from Massachusetts. (*id.*; Ex. 5 Wyman Dep. Tr., at 26:2-6).

**The Plaintiff Admits the averments contained in Paragraph 3.**

4. Plaintiff's job duties as Onsite Services Manager included, among other things:

   - "Obtaining weekly reporting from onsite staff, performing monthly meetings, and meeting with staff and clients on a quarterly basis."
   - "Maintaining a thorough understanding of onsite managed services contracts."
   - "Utilizing the ticketing system to create tickets for and approve time sheets for direct reports."
   - "Becoming proficient in software needed to perform his duties."
   - "Following guidelines regarding proper preparation of, and timely submission of, all paperwork and administrative requirements."
   - "Performing other duties as necessary by contract or management."

   (Ex. 4, Onsite Services Manager Job Description, NEWERA 00298-00300).

**The Plaintiff Admits the averments contained in Paragraph 4.**

5. During the time Plaintiff was employed as Onsite Services Manager, New Era had a contract with Samsung, through third party Aramark, to provide onsite audiovisual services to Samsung at Samsung's offices and facilities (the "Samsung Contract"). (Ex. 6, Rule 30(b)(6) Dep. Tr., at 41:15-42:20; Ex. 7, September 5, 2019 Facilities Service Provider Agreement, NEWER 00407-00417); Ex. 8, March 5, 2023 Facilities Service Provider Agreement, NEWERA00392-00406.)

**The Plaintiff Admits the averments contained in Paragraph 5.**

6. The Samsung Contract included a flat fee for contracted services provided within specified business hours in addition to an hourly overtime rate for services performed outside of business hours. (Ex. 7, Facilities Service Provider Agreement, NEWERA00407-00417; Ex. 8, Facilities Service Provider Agreement, NEWERA00392-00406.)

**The Plaintiff Admits the averments contained in Paragraph 6.**

7. For New Era to be paid the additional rate for overtime performed under the Samsung Contract, the overtime hours needed to be billed separately through creation of a monthly ticket in Connectwise, New Era's enterprise resource planning (ERP) system, separate from the monthly ticket for flat fee services. (Ex. 6, Rule 30(b)(6) Dep. Tr., at 29:19-30:12, 32:6-17; Ex. 9, Schneider Dep. Tr., at 36:3-16, 38:14-21.)

**The Plaintiff Admits the averments contained in Paragraph 7.**

8. Plaintiff received training about the details of how to use Connectwise when he transitioned in the role of Onsite Services Manager. (Ex. 9, Schneider Dep. Tr., 34:18-35:11; Ex. 5, Wyman Dep. Tr., at 36:4-23.)

**The Plaintiff Admits the averments contained in Paragraph 8.**

9. As Onsite Services Manager, Plaintiff was ultimately responsible for reviewing and approving the timesheets of employees who reported to him, creating and approving tickets for overtime, and ensuring that Samsung was billed for overtime work. (Ex. 1, Doherty Dep. Tr., at 109:4-19; 110:12-111:17; 112:18-24; Exhibit 9, Schneider Dep. Tr., at 36:3-16, 139:12-18; Ex. 5, Wyman Dep. Tr., at 27:17-29:3, 30:4-14, 57:20-24.)

**Plaintiff Denies the averments contained in Paragraph 9. Plaintiff states that although his job description states that he is responsible for "reviewing and approving the timesheets of employees who reported to him, creating and approving tickets for overtime, and ensuring that Samsung was billed for overtime work," his direct supervisor Paul Schneider effectively relieved him of these duties and took them on himself. (Ex. 19, Wyman Dep. Tr., at 41:10-42:23). Mr. Wyman would often raise the issues with his lack of visibility into overtime information to Paul Schneder in their monthly one-on-one meetings, to which Paul would tell Mr. Wyman that he would**

3

deal with the issues. (Ex. 19, Wyman Dep. Tr., at 41:10-42:23). **Additionally, the responsibility for ensuring tickets were created and approved for overtime and Samsung was billed for the overtime, at best, falls upon multiple New Era employees—including Paul Schneider and Sandy—who conferred monthly and reviewed the overtime tickets and billing.** (Ex. 19, Wyman Dep. Tr., at 57:20-58:11).

10. In May or June 2023, Plaintiff verbally informed his supervisor Paul Schneider, Vice President of Operations, US, that his Wife was pregnant and that he intended to reach out to Human Resources about taking parental leave. (Ex. 3, Defendant's Interrogatory Response, Response No. 16; Ex. 9, Schneider Dep. Tr., at 52:13-53:5; Ex. 5, Wyman Dep. Tr., at 87:19-88:8.)

    **The Plaintiff Admits the averments contained in Paragraph 10.**

11. Other than Schneider, Plaintiff did not inform anyone else in New Era management of his wife's pregnancy or his intent to take parental leave and no one else in management was aware prior to his termination. (Ex. 6, Rule 30(b)(6) Dep. Tr., at 21:21-23:5, 73:23-74:12; Ex. 5, Wyman Dep. Tr., at 91:19-24.)

    **The Plaintiff Denies the averments in Paragraph 11. The Plaintiff told various New Era techs that his wife was pregnant and informed New Era managers of same during a July or August 2023 manager's meeting.** (Ex. 19, Wyman Dep. Tr., at 113:11-114:23.) **Present at said meeting were Jerry, Sandy Ciarlo, Paul Schneider, Brian Sherwinski, and Stephanie.** (Ex. 19, Wyman Dep. Tr., at 113:11-114:23.)

12. Plaintiff testified at his deposition that Schneider "looked visibly surprised for about a second" when Plaintiff told him of the duration of his leave, but this was based on Plaintiff's perception of Schneider's body language and not anything Schneider said. (Ex.

4

5, Wyman Dep. Tr., at 103:12-105:9.) In their conversations, Schneider gave Plaintiff only positive feedback about taking leave and told him to take whatever time he needed and that he would be covered while he was out. (*Id.* at 101:11-104:5.)

**The Plaintiff Admits the averments contained in Paragraph 12**.

13. On June 13, 2023, Plaintiff emailed New Era's general Human Resources email about his wife's pregnancy and his intent to take leave. (Ex. 5, Wyman Dep. Tr., at 90:13-91:9; Ex. 10, Email from Michael Wyman to New Era HR, NEWERA00362.) The email was fielded by Amy Drilling, HR Specialist, who handled Plaintiff's business unit. (*Id.*) Plaintiff wrote in the email, "I've spoken to my manager [Schneider] and he was very understanding and willing to accommodate any needed leave, as long as there is a plan in place." (*Id.*)

**The Plaintiff Admits the averments contained in Paragraph 13**.

14. On July 10, 2023, Plaintiff submitted an internal paid parental leave request form. (Ex. 11, Michael Wyman Paid Parental Leave Request Form, NEWERA 00172.)

**The Plaintiff Admits the averments contained in Paragraph 14**.

15. In July and August 2023, Plaintiff and Drilling communicated by email about the details of Plaintiff's leave. (Ex. 12, July-August 2023 Email chain between Michael Wyman and Amy Drilling, NEWERA 00363-00365.)

**The Plaintiff Admits the averments contained in Paragraph 15**.

16. Within that email chain, on August 7, 2023, Plaintiff informed Drilling of his intention to take twelve weeks of parental leave beginning on or around September 15, 2023. (Ex. 12, July-August 2023 Email chain between Michael Wyman and Amy Drilling, NEWERA 00364.)

**The Plaintiff Admits the averments contained in Paragraph 16**.

17. On August 8, 2023, Drilling informed Plaintiff that he would be put on a leave of absence for eleven weeks ad that he would need to apply through New Era benefits provider Prudential for state leave rather than to Massachusetts directly. (Ex. 12, Email chain between Michael Wyman and Amy Drilling, at NEWERA 00363.)

    **The Plaintiff Admits the averments contained in Paragraph 17**.

18. Other than his email communications with Drilling, Plaintiff did not communicate with anyone else in Human Resources about his leave request. (Ex. 5, Wyman Dep. Tr., at 91"14-24.)

    **The Plaintiff Admits the averments contained in Paragraph 18**.

19. Plaintiff completed and submitted his application for Paid Medical Leave benefits through Prudential after his termination. (Ex. 5, Wyman Dep. Tr., at 81:11-20.)

    **The Plaintiff Admits the averments contained in Paragraph 19**.

20. Plaintiff's wife gave birth on September 4, 2023. (Ex. 5, Wyman Dep. Tr., at 81:24-82:5.)

    **The Plaintiff Admits the averments contained in Paragraph 20**.

21. On October 9, 023, Plaintiff was approved for Paid Family Medical Leave Benefits through Prudential commencing on September 15, 2023 following an unpaid waiting period of one week. (Ex. 13, October 9, 2023 Letter from Prudential to Michael Wyman, MW00001-00002.)

    **The Plaintiff Admits the averments contained in Paragraph 21**.

22. Plaintiff received biweekly Paid Family Medical Leave benefits in the amount of $2,259.64 from September 15, 2023 through November 30, 2023. (Ex. 13, October 9, 2023 Letter from Prudential to Michael Wyman, MW00001-00002.)

    **The Plaintiff Admits the averments contained in Paragraph 22**.

23. In or around July 2023, Sean Doherty, President of New Era's Technology Services Group, discovered that New Era's contract with Samsung was not profitable when he was reviewing requests for a raise from members of the team and determining a commission to pay to the account manager. (Ex. 6, Rule 30(b)(6) Dep. Tr., at 24:7-21; Exhibit 1, Doherty Dep. Tr., at 32:4-33:18.)

    **The Plaintiff Denies the averments contained in Paragraph 23. Sean Doherty stated in his deposition that he first learned that the Samsung Account was not profitable directly from Paul Schneider during a phone call with him.** (Ex. 21, Doherty Dep. Tr., at 37:1-38:18.) **Additionally, Sean Doherty denied that the Samsung account was "not profitable."** (Ex. 21, Doherty Dep. Tr., at 37:17-23.)

24. In late July or early August 2023, Doherty reached out to Schneider by telephone to discuss why the Samsung Contract was not profitable. (Ex. 3, Defendant's Interrogatory Responses, Response No. 13; Exhibit 1, Doherty Dep. Tr., at 32:4-33:18; Ex. 9, Schneider Dep. Tr., at 78:13-79:9; 81:16-82:3.)

    **The Plaintiff Denies the averment that the Samsung Account was not profitable as, by Sean Doherty's admission, this is not accurate** (Ex. 21, Doherty Dep. Tr., at 37:17-23.) **The Plaintiff Admits the remaining averments contained in Paragraph 24**.

25. At Doherty's request, Schneider investigated the matter and discovered that Samsung had not been invoiced for overtime work. Schneider asked Plaintiff about the Samsung Contract's lack of profitability and whether overtime was billed, and Plaintiff responded that he did not know. (Ex. 3, Defendant's Interrogatory Responses, Response No. 13; Ex. 9, Schneider Dep. Tr., at 83:6-84:4; 85:6-10; 86:20-87:20.)

7

**The Plaintiff Denies the averments contained in the first part of Paragraph 25. The Plaintiff Denies that Paul Schneider "discovered" that Samsung had not been invoiced for overtime work after Doherty's request for Schneider to investigate the matter. The Plaintiff, Paul Schneider, and Sandy would meet monthly for monthly staffing meetings, where Paul and Sandy would review all monthly tickets—including all of the hours and employee's who billed them.** (Ex. 19, Wyman Dep. Tr., at 57:20-58:11.) **Additionally, Plaintiff informed Paul Schneider on numerous occasions that he was not receiving sufficient information to bill the overtime.** (Ex. 19, Wyman Dep. Tr., at 41:10-23.) **The Plaintiff Admits that Doherty requested that Paul Schneider investigate the matter and that Paul Schneider did so. Plaintiff admits the averments contained in the second part of Paragraph 25.**

26. On August 4, 2023, Doherty emailed Schneider with three specific follow-up questions about the underbilling of Samsung:

   - "The total invoice amount (to Samsung) for unbilled overtime in 2023."
   - "Based on the 2022 unbilled overtime invoice amount and your local knowledge of the Samsung account, a annualized projection of unbilled overtime for 2022 (and 2021 if possible)."
   - "The name of the person that was responsible for tracking and invoicing these amounts to Samsung."

   (Ex. 14, August 2023 Email chain between Sean Doherty and Paul Schneider, NEWERA 00166-00168.)

   **The Plaintiff Admits the averments contained in Paragraph 26.**

27. To answer Doherty's questions, Schneider looked through all the timesheets for the Samsung account in 2022 and 2023. With assistance from Sandy Ciarlo, Managed Solutions Support Specialist, Schneider entered the information about unbilled overtime

8

amounts he found from review of the timesheets into a spreadsheet." (Ex. 6, Rule 30(b)(6) Dep. Tr., at 28:4-23; 69:10-15; Ex. 9, Schneider Dep. Tr., at 87:21-89:19, 104:9-105:11.)

**The Plaintiff Admits the averments contained in Paragraph 27.**

28. Schneider also spoke with Jerry Savage, Plaintiff's predecessor in the Onsite Managed Services position, and Chris Turner, Managed Solutions Account Executive. (Ex. 9, Schneider Dep. Tr., at 96:20-97:9; 98:12-99:9.)

**The Plaintiff Admits the averments contained in Paragraph 28.**

29. On August 7, 2023, Schneider emailed Doherty with responses to Doherty's questions and attached the spreadsheet he and Ciarlo had populated showing the total amount of unbilled overtime in 2022 and 2023 and the dollar value--$160,885 total, of which only $50,485 could be invoiced, resulting in a loss of $110,400 (Ex. 4, August 2023 Email chain between Sean Doherty and Paul Schneider, at NEWERA 00166-00167; Ex. 15, Spreadsheet attached to August 7, 2023 from Paul Schneider to Sean Doherty, NEWERA 00308-00309.)

**The Plaintiff Admits the averments contained in Paragraph 29.**

30. Schneider also responded that Plaintiff was responsible for setting up, approving, and tracking timesheets and that anything outside of contracted hours were to be billed separately, which Plaintiff would need to do and give the information to Ciarlo for service billing. (Ex. 14, August 2023 Email chain between Sean Doherty and Paul Schneider, at NEWERA 00167.)

**The Plaintiff Admits the averments contained in Paragraph 30.**

31. When he responded to Doherty with the information Doherty had requested, Schneider did not know what the outcome would be and did not suspect Plaintiff would be terminated. (Ex. 9, Schneider Dep. Tr., at 105:20-106:9.)

**The Plaintiff lacks the knowledge and information sufficient to Admit or Deny the averments in Paragraph 31.**

32. After receiving and reviewing the August 7, 2023 email and attached spreadsheet from Schneider, Doherty immediately decided to terminate Wyman's employment due to gross negligence. (Ex. 14, August 2023 Email chain between Sean Doherty and Paul Scheider, at NEWERA 00166; Ex. 6, Rule 30(b)(6) Dep. Tr., at 21:14-18; Ex. 1, Doherty Dep. Tr., at 30:10-31:6, 101:18-102:12.)

    **The Plaintiff Denies that he was grossly negligent. The Plaintiff lacks the knowledge and information necessary to determine whether Doherty immediately decided to terminate Plaintiff's employment or whether he terminated him due to gross negligence. The Plaintiff admits that Doherty made the decision to terminate Plaintiff.**

33. Prior to Plaintiff's termination, Doherty was not aware that Plaintiff's Wife was pregnant or that he intended to take parental leave. (Ex. 3, Defendant's Interrogatory Responses, Response No. 14; Ex. 1, Doherty Dep. Tr., at 88:24-8:7; Ex. 5, Wyman Dep. Tr., at 99:9-23.)

    **The Plaintiff lacks knowledge and information necessary to admit or deny the averments contained in Paragraph 33.**

34. On August 9, 2023, Doherty consulted with Angela Johnson, Global Head of Human Resources, about Plaintiff's termination. Johnson agreed with the decision to terminate. (Ex. 16, Johnson Dep. Tr., at 30:23-32:4, 33:3-6.)

    **The Plaintiff Admits the averments contained in Paragraph 34.**

35. Prior to Plaintiff's termination, Johnson was not aware that Plaintiff's wife was pregnant or that he intended to take parental leave. (Ex. 16, Johnson Dep. Tr., at 37:22-38:2, 48:7-49:5, 71:2-14.)

**The Plaintiff Denies the averments contained in Paragraph 35. In her deposition, Angela Johnson, the Global Director of Human Resources for New Era, testified that she had access to the general HR email account where Plaintiff sent his correspondence regarding his wife's pregnancy and family leave.** (Ex. 22, Johnson Dep. Tr., at 40:17-41:9.)

36. Doherty wrote to Schneider on August 9, 2023 and directed Plaintiff's employment be terminated "effective immediately" due to his "gross negligence" resulting in "significant lost revenues over an extended period of time." (Ex. 14, August 2023 Email chain between Sean Doherty and Paul Schneider, at NEWERA 00166; Ex. 1, Doherty Dep., at 45:16-47:6.)

**The Plaintiff Admits the averments in Paragraph 36.**

37. Plaintiffs employment was terminated the next day, August 10, 2023. (Ex. 3, Defendant's Interrogatory Responses, Response No. 13.)

**The Plaintiff Admits the averments in Paragraph 37.**

38. Following his termination, Plaintiff's position was not replaced, and his job duties were taken over by Schneider. (Ex. 3, Defendant's Interrogatory Responses, Response No. 15; Ex. 9, Schneider Dep. Tr., at 106:14-21.)

**The Plaintiff lacks the knowledge and information necessary to Admit or Deny the averments contained in Paragraph 38. Doherty's email to Paul Schneider stated "I suggest we repost the replacement position with a slightly different job description."**

(Ex. 14, August 2023 Email chain between Sean Doherty and Paul Schneider, at NEWERA 00166.)

39. New Era was unable to recover the unbilled overtime amounts from 2022 and 2023 from Samsung and took a loss of over $100,000.00 as a result. (Ex. 9, Schneider Dep. Tr., at 119:8-23.)

**The Plaintiff lacks the knowledge and information necessary to Admit or Deny the averments contained in Paragraph 39.**

## PLAINTIFF'S ADDITIONAL MATERIAL FACTS

### Mr. Wyman's Employment at New Era

1. As Onsite Services Manager position, Mr. Wyman worked on the Takeda and Samsung accounts, among others. (Ex. 19, Wyman Dep. Tr., at 28:22-29:3).

2. At first, one of Mr. Wyman's duties as Onsite Services Manager was to review and approve employee timesheets for the Samsung account via New Era's ConnectWise software, including any overtime worked by New Era employees on the Samsung account. (Ex. 19, Wyman Dep. Tr., at 30:11-32:1).

3. Mr. Wyman succeeded Jerry Savage as Onsite Services Manager. (Ex. 19, Wyman Dep. Tr., at 26:10-24). Mr. Savage was not successful as Onsite Services Manager and moved to another role within New Era, in part because he struggled managing New Era's Samsung account and had difficulty dealing with one or more of the technicians on the Samsung account. (Ex. 19, Wyman Dep. Tr., at 26:13-27:3).

4. Mr. Savage trained Mr. Wyman on all of the accounts, including the Samsung account, for approximately one (1) week. (Ex. 20, Schneider Dep. Tr., at 30:20-34:7; Ex. 19, Wyman

Dep. Tr., at 35:8-36:23). Thereafter, if Mr. Wyman had any questions, he would consult with Paul Schneider or anyone else who had expertise in the area his question pertained to. (Ex. 20, Schneider Dep. Tr., at 30:20-31:3).

5. Mr. Wyman had never worked on the Samsung account prior to becoming Onsite Services Manager and was not familiar with the account. (Ex. 19, Wyman Dep. Tr., at 29:4-29:6).

6. Historically, Paul Schneider, as overseer of the Samsung account, would review the timesheets Mr. Wyman approved and immediately point out any errors in them to Mr. Wyman. (Ex. 19, Wyman Dep. Tr., at 40:13-41:9).

7. Mr. Wyman and Paul Schneider had monthly meetings, usually lasting approximately thirty (30) minutes each, wherein they discussed Mr. Wyman's performance and Paul answered any questions that Mr. Wyman had. (Ex. 19, Wyman Dep. Tr., at 38:22—39:8).

8. During their monthly meetings, Paul Schneider never raised the issue to Mr. Wyman that overtime hours were not being billed properly or that Mr. Wyman was not doing his job properly. (Ex. 19, Wyman Dep. Tr., at 38:22—39:8).

9. During their meetings, Mr. Wyman would often bring to Paul Schneider's attention his concern that he could not bill and/or ticket certain overtime requests because the technicians were not providing enough information. (Ex. 19, Wyman Dep. Tr., at 41:10-42:23).

10. Mr. Wyman was often told by Paul Schneider not to worry about the Samsung underbilling issues, to "just keep doing what you're doing," and that he would take care of it. (Ex. 19, Wyman Dep. Tr., at 41:10-42:23, 57:1-19).

11. Mr. Wyman understood these comments made to him by his direct supervisor in official monthly meeting to mean that Paul Schneider would address the problem himself and that

Mr. Wyman need not take any further action regarding the billing issues on the Samsung Account. (Ex. 19, Wyman Dep. Tr., at 41:10-42:23, 57:1-19).

12. Historically, Paul Schneider, Sandy, and Mr. Wyman conferred monthly and reviewed the overtime tickets and billing for the Samsung Account, among others. (Ex. 19, Wyman Dep. Tr., at 57:20-58:11).

### Mr. Wyman's Request for Leave

13. In May or June of 2023, Mr. Wyman informed his supervisor Paul Schneider that his wife was pregnant with twins and that he would reach out to HR requesting leave for when his wife gives birth. (New Era's Interrogatory Responses, Response No. 16; Schneider Dep. Tr., at 52:13-53:3; Ex. 19, Wyman Dep. Tr., at 87:19-88:8).

14. On June 19, 2023, Mr. Wyman emailed the general HR inbox to inform HR his Wife was pregnant and he intended to take leave. (Ex. 19, Wyman Dep. Tr., at 90:13-91:9; Ex. 10, Email from Michael Wyman to New Era HR, NEWERA 00362).

15. Angela Johnson, the Global Director of HR for New Era stated in her deposition that approximately seven (7) employees in the New Era HR department, including herself, had access to the New Era general HR email. (Ex. 22, Johnson Dep. Tr., at 40:17-41:9).

16. On July 10, 2023, Mr. Wyman submitted a paid parental leave request form to HR. (Ex.11, Michael Wyman Paid Parental Leave Request Form, NEWERA 00172).

17. Mr. Wyman told various New Era techs that his wife was pregnant and informed New Era managers of same during a July or August 2023 manager's meeting. (Ex. 19, Wyman Dep. Tr., at 113:11-114:23). Present at said meeting were Jerry, Sandy Ciarlo, Paul Schneider, Brian Sherwinski, and Stephanie. (Ex. 19, Wyman Dep. Tr., at 113:11-114:23).

18. In early August, Mr. Wyman informed Paul Schneider that he would be taking twelve (12) weeks of leave and Paul Schneider appeared visibly surprised when Mr. Wyman informed him of the duration of his intended leave. (Ex. 19, Wyman Dep. Tr., at 101:11-106:9).

19. On August 7, 2023, Mr. Wyman informed Amy Drilling that he would be taking twelve (12) weeks leave beginning on or around September 15, 2023. (Ex. 19, Wyman Dep. Tr., at 101:11-106:9).

20. On August 8, 2023, Amy Drilling informed Mr. Wyman that he would be put on leave for eleven (11) weeks and that he would need to apply for leave through Prudential rather than through Massachusetts. (Ex. 19, Wyman Dep. Tr., at 101:11-106:9).

**Mr. Wyman's Termination from New Era**

21. In his August 9, 2023 email to Sean Doherty, which copied Keith Schuetter, Paul Schneider stated that he "consulted with Sean Doherty and Keith Schuetter about going back to the beginning of the new agreement to capture these costs." (Ex. 14, August 2023 Email chain between Paul Schneider and Sean Doherty, NEWERA 00166-00167).

22. Sean Doherty and Paul Schneider conferred via telephone regarding the Samsung account prior to Sean Doherty's August 4, 2023 email to Paul Schneider. (Ex. 21, Doherty Dep. Tr., at 31:11-36:6; New Era's Interrogatory Responses, Response No. 13).

23. Sean Doherty was also made aware during a phone call with Paul Schneider, that the Samsung account was underbilled. (Ex. 21, Doherty Dep. Tr., at 35:17-39:3).

24. Sean Doherty first became aware that the Samsung Account had unbilled overtime directly from Paul Schneider. (Ex. 20, Schneider Dep. Tr., at 37:1-38:10).

25. Prior to his decision to terminate Mr. Wyman, Sean Doherty conferred with the *Global Director of Human Resources* for New Era U.S., Angela Johnson. (Ex, 21, Doherty Dep. Tr., at 46:1-47:10; Ex. 22, Johnson Dep. Tr., at 30:23-33:22).

26. Angela Johnson conferred with Sean Doherty on August 9, 2023 via telephone and confirmed his decision to terminate Mr. Wyman's employment. (Ex. 21, Doherty Dep. Tr., at 46:1-47:10; Ex. 22, Johnson Dep. Tr., at 30:23-33:22).

27. On August 10, 2025, Paul Schneider terminated Mr. Wyman's employment with New Era via a Microsoft Teams call. (Ex. 20, Schneider Dep. Tr., at 110:2-111:7).

28. On August 10, 2023, Amy Drilling, who Mr. Wyman consulted with regarding family leave, sent Mr. Wyman a lengthy email with the subject line "Separation Details," detailing the offboarding process for Mr. Wyman. (Ex. 18, August 10, 2023 email from Amy Drilling to Michael Wyman titled "Separation Details," MW000194-000195).

29. Paul Schneider's August 7, 2023 email to Sean Doherty omitted the fact that he informed Mr. Wyman that he assumed at least some responsibility of the billing for the Samsung Account. (Ex. 14, August 2023 Email chain between Paul Schneider and Sean Doherty, NEWERA 00166-00167; Ex. 19, Wyman Dep. Tr., at 41:10-42:23, 57:1-19).

30. Paul Schneider's August 7, 2023 email to Sean Doherty was taken as truth and relied upon by Sean Doherty in his decision to terminate Mr. Wyman. (Ex. 21, Doherty Dep. Tr., at 47:3-14).

31. Sean Doherty did not conduct any further investigation into the Samsung billing issue nor did he ask Mr. Wyman for his version of the story. (Ex. 21, Doherty Dep. Tr., at 47:15-48:11).

32. Mr. Wyman never received a negative performance review while employed at New Era. (Ex. 17, New Era Bi-Annual Performance Reviews, Michael Wyman, MW000146-MW000160).

Respectfully submitted,
Plaintiff,

**MICHAEL WYMAN,**
By his Attorneys,

Kenneth J. DeMoura, Esq.
BBO No.: 548910
Christopher M. Sambataro, Esq.
BBO No.: 711601
DeMoura|Smith LLP
607 North Avenue, Suite F
Wakefield, MA 01880
Tel: (781) 914-3777
Fax: (781) 914-3780
kdemoura@demourasmith.com
csambataro@demourasmith.com
Dated: August 26, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed on August 26, 2025, through the CM/ECF system, and was sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Christopher M. Sambataro, Esq.