# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MICHAEL WYMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **Civil Action No.** |
| v. ) | **24-11450-BEM** |
| ) | |
| NEW ERA TECHNOLOGY, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER ON
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**MURPHY, J.**

Plaintiff Michael Wyman brings this action against Defendant New Era Technology, Inc. ("New Era"), alleging retaliation and failure to restore him to his position following parental leave in violation of the Massachusetts Paid Family Medical Leave Act ("PFMLA"). Before the Court is New Era's motion for summary judgment. For the reasons set forth below, the Court will grant New Era's motion.

## I.    Background

### A.    Factual Background

New Era provides "technology solutions to customers, including audiovisual services such as videoconferencing, large venue solutions, and video surveillance." Dkt. 35 ("Plaintiff's Counterstatement of Material Fact" or "CSMF") ¶ 1.[1] Mr. Wyman worked for New Era beginning in March 2011 and was promoted to Onsite Services Manager in February 2021. *Id.* ¶¶ 2–3. In

---

[1] Unless otherwise noted, citation to the CSMF or Dkt. 37 ("Defendant's Response to Plaintiff's Additional Material Facts" or "RSMF") refers to the facts as admitted or substantially agreed upon by the parties.

this role, his responsibilities included, in relevant part, "[u]tilizing the ticketing system to create tickets for and approve time sheets for direct reports" and "[f]ollowing guidelines regarding proper preparation of, and timely submission of, all paperwork and administrative requirements." *Id.* ¶ 4. Mr. Wyman reported to Paul Schneider, who was New Era's U.S. Vice President of Operations. *Id.* ¶ 10.

One of the accounts Mr. Wyman managed to provide onsite audiovisual services to Samsung (the "Samsung Account"). *Id.* ¶¶ 5, 9. This contract had specific terms and billing requirements for any overtime work, which included creating monthly tickets in an online system. *Id.* ¶ 7. Mr. Wyman received training on this system when he was promoted to Onsite Services Manager.[2] *Id.* ¶ 8. While Mr. Wyman's job description included having ultimate responsibility for reviewing and approving overtime tickets for the employees he managed, Mr. Wyman contends that Mr. Schneider "effectively relieved [Mr. Wyman] of those duties and took them on himself." *Id.* ¶ 9.[3] Mr. Wyman further contends that Mr. Schneider would review and correct the timesheets with Mr. Wyman weekly, though New Era contends that these meetings "ended after a couple of months." Dkt. 37 ("Defendant's Response to Plaintiff's Additional Material Facts" or "RSMF") ¶ 6. The parties also dispute the frequency with which Mr. Wyman raised concerns about his ability to create overtime tickets and whether Mr. Schneider suggested that he would handle the issue himself. *Id.* ¶¶ 9–11. Mr. Wyman did not receive any negative performance reviews throughout his tenure at New Era. *Id.* ¶ 32.

---

[2] The parties dispute how long this training ran. RSMF ¶ 4.

[3] *But see* Dkt. 34-3 at 57:20–58:11 (Mr. Wyman's testimony that he was responsible for billing out-of-scope and overtime work, but noting that there were numerous opportunities for other people, including Mr. Schneider, to help address the issue).

In May or June 2023, Mr. Wyman verbally informed Mr. Schneider that his wife was pregnant and that he planned to reach out to Human Resources ("HR") about taking parental leave. CSMF ¶ 10. During this conversation, Mr. Wyman perceived Mr. Schneider's body language to convey surprise upon learning the duration of leave Mr. Wyman planned to take, but Mr. Schneider provided only positive feedback about his leave plans. *Id.* ¶ 12. On June 19, 2023, Mr. Wyman communicated his intent to take leave to HR through an email to a "general HR inbox."[4] RSMF ¶ 14. Mr. Wyman wrote in the email, "I've spoken to my manager [Schneider] and he was very understanding and willing to accommodate any needed leave, as long as there is a plan in place." CSMF ¶ 13. An HR Specialist fielded the email. *Id.* The HR Specialist and Mr. Wyman coordinated the details of Mr. Wyman's leave and the required paperwork, and this HR Specialist is the only person in HR with whom Mr. Wyman communicated about his leave request. *Id.* ¶¶ 15–18. Outside of HR, Mr. Wyman informed some New Era "techs" about his wife's pregnancy and may have also told some other managers.[5] RSMF ¶ 17.[6]

Around July 2023, Sean Doherty, New Era's Technology Services Group President, developed concerns about the billing on the Samsung Account.[7] CSMF ¶ 23. At Mr. Doherty's request, Mr. Schneider investigated the matter. *Id.* ¶ 25. On August 4, 2023, Mr. Doherty emailed Mr. Schneider specific follow-up questions for the investigation, which included the total invoice for unbilled overtime in 2023, a projection of unbilled overtime for 2021 and 2022, and "[t]he

---

[4] Seven employees in HR had access to this email account, including the U.S. Global Director of Human Resources, Angela Johnson. RSMF ¶ 15.

[5] These managers did not include anyone involved in the investigation and decision to fire Mr. Wyman—other than Mr. Schneider—or any HR employee. RSMF ¶ 17.

[6] Mr. Wyman's wife gave birth on September 4, 2023, and Mr. Wyman received PFMLA benefits from September 15, 2023, through November 30, 2023. CSMF ¶¶ 20–22.

[7] The parties dispute whether this issue related to the "profitability" of the Samsung Account and who first raised the specific issue of underbilling overtime. CSMF ¶ 23. Neither of these issues is material.

name of the person that was responsible for tracking and invoicing these amounts to Samsung."[8] CSMF ¶ 26.  Mr. Schneider conducted the investigation, with assistance from various other employees, and emailed Mr. Doherty his findings and a spreadsheet of his calculations on August 7, 2023.  *Id.* ¶¶ 27–29.  In this email, Mr. Schneider reported to Mr. Doherty that the total unbilled overtime amounted to $160,885, of which they could invoice only $50,485, and that Mr. Wyman was responsible for overtime invoicing on the Samsung Account.  *Id.* ¶¶ 29–30. Mr. Schneider was not aware of how Mr. Doherty planned to respond to the results of this investigation, and did not suspect that Mr. Wyman would be fired.  *Id.* ¶ 31.[9]

After receiving Mr. Schneider's email and analysis—and based on these—Mr. Doherty made the decision to fire Mr. Wyman.  *Id.* ¶ 32; RSMF ¶¶ 30–31.  When making this decision, Mr. Doherty was not aware that Mr. Wyman's wife was pregnant or that Mr. Wyman planned to take parental leave.  CSMF ¶ 33.[10]  Prior to terminating Mr. Wyman's employment, Mr. Doherty conferred with the U.S. Global Director of Human Resources, Angela Johnson, who agreed with the decision to terminate.[11]  *Id.* ¶ 34; RSMF ¶ 25.  On August 9, 2023, Mr. Doherty emailed

---

[8] Mr. Doherty learned from Mr. Schneider that the Samsung Account had unbilled overtime.  RSMF ¶ 24.

[9] Mr. Wyman claims to "lack[] the knowledge and information sufficient to Admit or Deny the averments in Paragraph 31."  CSMF ¶ 31.  At summary judgment, this is insufficient.  *See* Local Rule 56.1 ("Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties."); *Silva v. Town of Uxbridge*, 771 F. Supp. 3d 56, 65 (D. Mass. 2025) ("The nonmovant 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986))).  As such, the Court treats as undisputed the facts in paragraph 31.

[10] Mr. Wyman claims to "lack[] the knowledge and information sufficient to Admit or Deny the averments in Paragraph 33."  CSMF ¶ 33.  Again, this is insufficient, and the Court generally treats as undisputed the facts in paragraph 33.  That said, Mr. Wyman argues extensively in his opposition brief that Mr. Doherty was aware, should have been aware, or should have had Mr. Schneider's awareness of Mr. Wyman's leave plans imputed upon him.  *See generally* Dkt. 34 ("Opp.").  In preference for resolving disputes on the merits, the Court discusses these arguments below.  *See infra* Section III.

[11] Mr. Wyman contends that this conversation occurred before Mr. Doherty had made the decision to terminate Mr. Wyman's employment, while New Era contends that Mr. Doherty had already reached a decision. RSMF ¶¶ 25–26.  This dispute is not material.  *See infra* Section III(A)(2)(b).

Mr. Schneider, directing him to terminate Mr. Wyman's employment "effective immediately" due to his "gross negligence" related to the unbilled overtime that resulted in "significant lost revenues over an extended period of time." CSMF ¶ 36. On August 10, 2023, Mr. Schneider informed Mr. Wyman that his employment was being terminated. RSMF ¶ 27.

### B.    Procedural Background

Mr. Wyman filed this action on March 28, 2024, in Massachusetts Superior Court, alleging two violations of the Massachusetts Paid Family Medical Leave Act, Mass. Gen. Laws ch. 175M, § 9 against New Era: (1) retaliatory termination and (2) failure to restore to a prior position. Dkt. 1-3 ("Compl.") ¶¶ 20–36. New Era removed the case to this Court on June 4, 2024. Dkt. 1 at 3. New Era has now moved for summary judgment. Dkt. 30; *see also* Dkt. 31 ("Mem."); Dkt. 34 ("Opp."); Dkt. 36 ("Reply"). The Court heard oral arguments on October 21, 2025, and took the matter under advisement.

## II.    Standard of Review

Summary judgment will only be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Grogan v. All My Sons Bus. Dev. LLC*, 552 F. Supp. 3d 142, 145 (D. Mass. 2021) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009). However, "[a]s to issues on which the party opposing summary judgment would bear the burden of proof at trial, that party may not simply rely on the absence of evidence but, rather, must point to definite and

competent evidence showing the existence of a genuine issue of material fact." *Perez v. Lorraine Enters.*, 769 F.3d 23, 29–30 (1st Cir. 2014).

"At summary judgment, the court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* (citations and internal quotes omitted). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I*, 53 F.3d 454, 460 (1st Cir. 1995). However, "[t]he opposing party may not rely on conclusory allegations and unsupported speculation, and even when 'elusive concepts' like motive or intent are at issue summary judgment may be appropriate. The opposing party must offer 'definite, competent evidence' to defeat a properly supported motion for summary judgment." *Burns v. State Police Ass'n of Mass.*, 230 F.3d 8, 9 (1st Cir. 2000) (citations omitted).

## III.    Discussion

### A.    Retaliation

An employer may not "retaliate by . . . firing . . . an employee for exercising any right to which such employee is entitled under this chapter or with the purpose of interfering with the exercise of any right to which such employee is entitled under this chapter." Mass. Gen. Laws ch. 175M, § 9(a). "However, while an employee may not be penalized for exercising [his] rights under the statute, an employee may nevertheless be discharged, not promoted, or denied benefits for independent reasons." *Carrero-Ojeda v. Autoridad de Energia Electrica*, 755 F.3d 711, 719 (1st Cir. 2014). In assessing whether an employee has been unlawfully retaliated against, the Court applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411

U.S. 792 (1973).[12]  *See Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 161 (1st Cir. 1998)

(applying *McDonnell Douglas* framework to claims that an employee was discriminated against

for availing himself of FMLA-protected rights).  A plaintiff must show that "(1) he availed himself

of a protected right under the [PFMLA]; (2) he was adversely affected by an employment decision;

[and] (3) there is a causal connection between the employee's protected activity and the employer's

adverse employment action."  *Id.*[13]  "The burden then shifts to the defendant to articulate a

legitimate, non-retaliatory reason for the adverse action."  *Lopera v. Compass Grp. USA, Inc.*, 578

F. Supp. 3d 130, 136 (D. Mass. 2021) (citing *Hodgens*, 144 F.3d at 161).  When a defendant

provides this reason, the burden shifts back to the plaintiff to "demonstrat[e] that there is sufficient

evidence for a reasonable juror to find that the stated reason is a pretext for retaliation."[14]  *Gregg*

*v. Ne. Univ.*, 743 F. Supp. 3d 257, 277 (D. Mass. 2024), *appeal dismissed*, 2025 WL 2617054 (1st

Cir. Mar. 18, 2025).

---

[12] The parties agree that Mr. Wyman's retaliation claim should be analyzed under the *McDonnell Douglas* framework.  Opp. at 8–9 (conceding that the PFMLA statutory presumption of retaliation does not apply here and arguing under the *McDonnell Douglas* framework instead).

[13] "Massachusetts courts typically apply the framework used for retaliation claims under the FMLA" when analyzing PFMLA claims.  *Kliskey v. Making Opportunity Count, Inc.*, 775 F. Supp. 3d 496, 506 (D. Mass. 2025) (citing *Corbett v. Mananto Enter., LLC*, 2024 WL 3843145, at *10–11 (Mass. June 5, 2024) ("The court turns to case law under the [FMLA] to assess the plaintiff's [PFMLA] claims because state courts have not yet had an opportunity to provide guidance on the [PFMLA] given its recent enactment.")); *see also Tardiff v. Laborers Int'l Union of N. Am. Loc. Union 609*, 2025 WL 2374000, at *12 (D. Mass. Aug. 15, 2025) ("Given the similar language and objective of the PFMLA and the FMLA, the Court will evaluate the claim using the case precedent of this Circuit developed for FMLA claims."); *Corbett v. Mananto Enters., LLC*, 2024 WL 3843145, at *10 (Mass. Super. Ct. June 5, 2024) (applying FMLA framework and relying on federal case law when analyzing a PFMLA claim).

[14] Outside of the FMLA context, Massachusetts and federal case law differ in their approach to pretext.  "Massachusetts is a pretext only jurisdiction."  *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 681 (2016) (quoting *Blare v. Husky Injection Molding Sys. Bos., Inc.*, 419 Mass. 437, 443 (1995)).  Thus, at the third step of the *McDonnell Douglas* inquiry, a plaintiff "need only present evidence from which a reasonable jury could infer that '[the defendant's] facially proper reasons given for its action against him were not the real reasons for that action.'"  *Id.* at 682 (quoting *Wheelock Coll. v. Mass. Comm'n Against Discrimination*, 371 Mass. 130, 139 (1976)).  The Court assumes that Massachusetts would apply this same approach to pretext in PFMLA cases.  But this difference does not impact the outcome here for the reasons explained below.  *See infra* Section III(A)(2).

1.     **Prima Facie Case and Legitimate Justification**

The Court assumes without deciding that Mr. Wyman has established a prima facie case of retaliation and that New Era has identified a legitimate, nondiscriminatory reason for its decision to terminate Mr. Wyman based on the overtime billing issues.[15]  *See Ameen v. Amphenol Printed Cirs., Inc.*, 777 F.3d 63, 69 (1st Cir. 2015) (citing *Collazo-Rosado v. Univ. of P.R.*, 765 F.3d 86, 92–93 (1st Cir. 2014) (noting "[t]he simplest way to decide a case is often the best," and assuming without deciding that the plaintiff had established a prima facie case of retaliation, before holding that she failed to present a triable issue of fact as to pretext)).

2.     **Pretext**

Under the *McDonnell Douglas* framework, the burden shifts back to Mr. Wyman to prove that New Era's stated justification was a pretext intended to disguise its retaliation for his engaging in PFMLA-protected activity.  "To demonstrate that he was fired in retaliation for engaging in PFMLA-protected conduct, [Mr. Wyman] 'must show that the retaliator knew about [his] protected activity—after all, one cannot have been motivated to retaliate by something he was unaware of.'"  *Ameen*, 777 F.3d at 70 (second alteration in original) (quoting *Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 139 (1st Cir. 2013)).  On this issue, Mr. Wyman's case fails.

a.     **Mr. Doherty's Knowledge**

Mr. Wyman sets forth two theories as to how a jury could conclude that Mr. Doherty, as the ultimate decisionmaker, knew about his leave request.[16]  First, Mr. Wyman argues that

---

[15] Mr. Wyman does not dispute that the Samsung Account was underbilled but does dispute that he should have been held solely responsible for the issue such as to justify termination.  *See* CSMF ¶ 29; RSMF ¶ 29.  However, given the fact that Mr. Doherty understood overtime billing to be Mr. Wyman's responsibility, *see* CSMF ¶ 30; RSMF ¶ 30, the Court assumes for the purposes of the motion that this constitutes a legitimate, nondiscriminatory reason for termination.

[16] There is no dispute that Mr. Doherty made the decision to fire Mr. Wyman.  CSMF ¶ 32.

Mr. Doherty spoke to Mr. Schneider multiple times before firing Mr. Wyman and that Mr. Schneider knew about Mr. Wyman's leave plans. Opp. at 12. Second, Mr. Wyman emphasizes that Ms. Johnson had access to the HR email account to which Mr. Wyman sent his request for leave and that Ms. Johnson spoke to Mr. Doherty before Mr. Doherty fired Mr. Wyman. *Id.*

Neither of these theories creates a genuine dispute of fact. There is no evidence beyond Mr. Wyman's speculation that Mr. Doherty had any knowledge of Mr. Wyman's parental leave request when he decided to fire Mr. Wyman. *See Mancini v. City of Providence ex rel. Lombardi*, 909 F.3d 32, 38 (1st Cir. 2018) (explaining that "'[c]onclusory allegations, improbable inferences, acrimonious invective, or rank speculation' will not suffice" at summary judgment (quoting *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010))). In contrast, there is undisputed, sworn testimony that Mr. Doherty and Mr. Schneider did not discuss Mr. Wyman's leave request, Dkt. 38-2 at 106:22–107:1 (Mr. Schneider's testimony that he did not inform Mr. Doherty of Mr. Wyman's leave request before learning that Mr. Doherty planned to fire Mr. Wyman), and that Mr. Doherty had no knowledge about the leave request when he made the decision to fire Mr. Wyman, Dkt. 33-1 at 30:10–21 (Mr. Doherty's testimony about his lack of knowledge of the leave request); *id.* at 88:24–89:7 (testifying that neither Mr. Schneider nor anyone else informed him of Mr. Wyman's leave plans prior to his making the decision to terminate Mr. Wyman). There is also undisputed, sworn testimony from Ms. Johnson that she had no knowledge about Mr. Wyman's request for parental leave before meeting with Mr. Doherty about terminating Mr. Wyman's employment. *See* Dkt. 33-16 at 48:19–49:14 (Ms. Johnson's testimony that she first learned of Mr. Wyman's leave request after his termination).

Mr. Wyman identifies no evidence to suggest that Ms. Johnson saw Mr. Wyman's email about his leave request, and instead only speculates that she would have seen it because she had access to the account.[17]  *Compare* Opp. at 12 (arguing the inference of Ms. Johnson's knowledge based only on her access to the account), *with* Dkt. 34-6 at 40:10–41:21 (Ms. Johnson's testimony that HR Specialists field all emails sent to the general HR email and that the HR Specialists delete or file emails after handling them), *and* Dkt. 33-16 at 48:19–49:14 (Ms. Johnson's testimony that she had no knowledge of Mr. Wyman's leave request prior to his termination).  Speculation alone cannot defeat summary judgment.  *See Mancini*, 909 F.3d at 38 (quoting *Ahern*, 629 F.3d at 54).

While Mr. Wyman argues that taking Mr. Doherty's and Ms. Johnson's testimony at this stage "would improperly assess [their] credibility . . . and the weight of their testimony," Opp. at 12, the Court does not need to assess any credibility where Mr. Wyman fails to identify facts in the record to dispute the testimony, *see, e.g.*, *Nunes v. Mass. Dep't of Corr.*, 766 F.3d 136, 142 (1st Cir. 2014) ("Generally speaking, a party cannot raise a genuine dispute merely 'by relying on the hope that the jury will not trust the credibility of the witness,' but must instead present 'some affirmative evidence' on the point, except perhaps where the testimony is 'inherently unbelievable.'" (quoting *McGrath v. Tavares,* 757 F.3d 20, 28 n.13 (1st Cir. 2014))).  Mr. Doherty's and Ms. Johnson's testimony is certainly not "inherently unbelievable."  *See id.*  That Mr. Doherty and Ms. Johnson *could have* learned about Mr. Wyman's leave request does not mean that they *did* learn about it.  On the record before it, the Court cannot conclude that a reasonable jury could find—without resorting to unsupported speculation—that Mr. Doherty was aware of Mr. Wyman's leave when he made the decision to fire Mr. Wyman.

---

[17] Even assuming Ms. Johnson did know about Mr. Wyman's leave request, there is no evidence that she told Mr. Doherty—the ultimate decisionmaker for Mr. Wyman's termination.  *See* Dkt. 33-1 at 30:10–21.

b.    <u>Cat's Paw Theory</u>

As an alternative, Mr. Wyman argues that a reasonable jury could find New Era liable under the "cat's paw theory." Opp. at 12–15. Under the cat's paw theory, corporate liability attaches when, "motivated by retaliatory animus," a supervisor provides "false or misleading information to a decisionmaker." *Ameen*, 777 F.3d at 70–71; *see also Brandt v. Fitzpatrick*, 957 F.3d 67, 79 (1st Cir. 2020) (noting that under the cat's paw theory an employer can be held liable when a decision-making official "relies on false information that is manipulated by another employee who harbors illegitimate animus to take an adverse employment action").

Here, there is no evidence from which a jury could conclude that Mr. Schneider acted with retaliatory animus in reporting the unbilled overtime to Mr. Doherty. Nor does Mr. Wyman argue that there was retaliatory animus. Instead, Mr. Wyman contends that Mr. Schneider misled Mr. Doherty in blaming Mr. Wyman so that Mr. Schneider could hide his own involvement. Opp. at 14–15. But even assuming that Mr. Schneider acted out of self-interest to shield himself from potential repercussions, that does not demonstrate retaliatory animus related to Mr. Wyman's leave.[18] *Cf. DeNovellis v. Shalala*, 135 F.3d 58, 66 (1st Cir. 1998) ("Even if the evidence is read to suggest a degree of personal animosity . . . personal animosity may have many origins other than a desire to retaliate.").

The only evidence related to his leave request that Mr. Wyman points to is his belief that Mr. Schneider appeared "surprised" upon hearing how long Mr. Wyman planned to take off on

---

[18] The parties heavily dispute with whom blame should lie for the failure to bill overtime on the Samsung Account. These arguments, however, are "largely beside the point." *Bennett v. Saint-Gobain Corp.*, 507 F.3d 23, 31 (1st Cir. 2007). The sole question is whether Mr. Doherty believed Mr. Wyman to be culpable for the billing issue and acted on that belief in deciding to fire him. *Id.*; *see also Kouvchinov v. Parametric Tech. Corp.*, 537 F.3d 62, 67 (1st Cir. 2008) (explaining that to show pretext "it is not enough for a plaintiff to show that the decisionmaker acted on an incorrect perception" or "information that . . . later prove[d] to be inaccurate"; instead, he "must show that the decisionmaker did not believe in the accuracy of the reason given for the adverse employment action"). On this point, there is no dispute. RSMF ¶¶ 30–31.

parental leave and the temporal proximity.[19]  *See* Opp. at 15; RSMF ¶ 18.  This does not establish animus related to Mr. Wyman's leave request.  *See Roman v. Potter*, 604 F.3d 34, 40 (1st Cir. 2010) (explaining that an employee's individual belief that the adverse employment action was moved by retaliatory animus is not enough to show pretext or animus).  Even if Mr. Schneider was surprised by the length of Mr. Wyman's proposed leave plan, by all accounts, Mr. Schneider was supportive of Mr. Wyman's plans to take parental leave.  *See, e.g.*, Dkt. 33-10 (Mr. Wyman's email to HR about his leave plans, noting that Mr. Schneider "was very understanding and willing to accommodate any needed leave, as long as there is a plan in place"); Dkt. 38-2 at 52:17–53:5 (Mr. Schneider's testimony that he was supportive of Mr. Wyman's leave request); Dkt. 34-3 at 102:4–5 (Mr. Wyman's testimony that Mr. Schneider "never gave [Mr. Wyman] any sort of feedback [related to his leave plans] that wasn't positive").

On the record before it, the Court is left with only Mr. Wyman's speculation that Mr. Schneider acted out of PFMLA-related animus when reporting the overtime billing issue to Mr. Doherty.[20]  But, again, "speculation unsupported by facts is manifestly inadequate to stave off summary judgment."  *Trahan v. Wayfair Me., LLC*, 957 F.3d 54, 63 (1st Cir. 2020) (citing *Lang v. Wal-Mart Stores E., L.P.*, 813 F.3d 447, 460 (1st Cir. 2016)); *see also Ameen*, 777 F.3d at 72 ("'[S]ubjective belief in retaliation is not enough' to show animus." (quoting *Roman*, 604 F.3d at 41)).  Nor does Mr. Wyman identify negative comments or actions from anyone else at New Era related to his taking parental leave.  Mr. Wyman has not offered evidence of retaliatory animus on

---

[19] The Court also finds suspect the idea that a mere expression of surprise could be considered demonstrative of animus.  *See Animus*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "animus" as "[i]ll will; animosity").

[20] The Court notes that the fact that Mr. Schneider did not make his report about the billing issues out of his own initiative also cuts against this being an act of retaliatory animus.  *See* CSMF ¶¶ 25–26 (Mr. Doherty initiated the investigation and directed Mr. Schneider to respond to specific questions about the overtime billing).

anyone's part sufficient to raise a disputed question of fact, and thus there can be no pretext.  As such, New Era is entitled to summary judgment on the retaliation claim.

### B.    <u>Failure to Restore</u>

The PFMLA also provides that an employee who has taken leave "shall be restored to the employee's previous position or to an equivalent position, with the same status, pay, employment benefits, length-of-service credit and seniority as of the date of leave."  Mass. Gen. Laws ch. 175M, § 2(e).  But an employee has no right to reinstatement "once an employee has been discharged for reasons unrelated to [his] leave."  *Carrero-Ojeda v. Autoridad de Energia Eletrica*, 870 F. Supp. 2d 313, 320 (D.P.R. 2012), *aff'd*, 755 F.3d 711 (1st Cir. 2014).   Having determined that Mr. Wyman's termination did not violate the PFMLA, he was not entitled to be restored to his prior position after his parental leave.

### IV.    <u>Conclusion</u>

For the foregoing reasons, Defendant's motion for summary judgment, Dkt. 30, is GRANTED.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Dated:  October 28, 2025                     Judge, United States District Court